Melchick Unemployment Compensation Case.
Pramco, Inc. *v.* Unemployment Compensation
Board of Review (et al., Appellants).

Argued April 20, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

reargument refused November 9, 1959.

*Sidney G. Handler*, with him *Handler & Rosenberg*, for appellants.

*David C. Harrison*, Deputy Attorney General, with him *Sydney Reuben*, Assistant Attorney General, and *Anne X. Alpern*, Attorney General, for Unemployment Compensation Board of Review, appellee.

*O. W. Vanderlin*, with him *Joseph M. McNerney*, for employer, appellee.

OPINION BY MR. JUSTICE COHEN, July 24, 1959:

Appellants are forty-five employees of Pramco, Inc., (Company), a blouse manufacturer in Punxsutawney, Pennsylvania. The majority of the shareholders of Company also owned Monarch Mfg. Co., a New York partnership which manufactured blouses. As owners of Monarch, they signed an agreement with International Ladies' Garment Workers' Union (Union) not to subcontract work to any shop not organized by Union.

Company required all its employees to sign affidavits that they neither were nor would become Union members. In November, 1955, Union attempted to organize the employees of Company and signed up many of them. After numerous attempts to obtain recognition and to bargain proved fruitless, forty-seven of the employees of Company went on strike. During the course of the strike, Company notified claimants and all other strikers that if they did not return to work immediately they would be replaced. Very few, if any, replacements were hired by Company. On March 16, 1956, after many meetings with impartial mediators, the strike was settled. The striking employees immedi-

ately stopped picketing and sought to return to work. Company, however, said they would be given work "when it became available"; but many workers were never recalled.

Appellants made claims for unemployment compensation for the periods subsequent to the settlement of the strike and their reapplication for work. They were awarded compensation by the referee, which award was affirmed by the board of review. On appeal, the Superior Court reversed 185 Pa. Superior Ct. 303 (1958), and held that claimants had voluntarily left work. Appellants then filed a petition for an allowance of appeal which we granted.

Section 402 of the Pennsylvania Unemployment Compensation Law provides that "An employee shall be ineligible for compensation for any week— . . . (b) In which his unemployment is due to voluntarily leaving work without cause . . . provided . . . That the provisions of this subsection shall *not* apply in the event of a *stoppage of work* which exists because of a labor dispute. . . ." (Emphasis supplied). Act of December 5, 1936, P.L. (1937) 2897, §402, as amended, 43 P.S. §802(b).

The basis for the Superior Court's opinion was that, since Company continued in operation throughout the strike, there was no "stoppage of work" within the meaning of Section 402(b) ; therefore, appellants voluntarily left work. It held that "work stoppage" referred to "cessation of work in the plant or place of employment and not to cessation of work by the employe." *Harris Unemployment Compensation Case,* 185 Pa. Superior Ct. 235, 138 A. 2d 207 (1958). The court held that since there was not a *complete cessation of production* claimants did not come within the exclusion provision of the section and hence became "voluntary quits."

If the interpretation of stoppage of work made by the Superior Court were correct, then for all practical purposes the proviso in Section 402(b) would be inoperative. A striker would be in danger of forfeiting all his compensation rights in any situation where a strike was less than 100% effective. Appellants contend that "stoppage of work" insofar as it is used in Section 402(b) refers to a cessation by the *employee;* it is quite clear that this is a sounder view. We are not called upon here to interpret the meaning of this phrase as it is used in Section 402(d) which is concerned with the right to compensation during a labor dispute. If we were faced with that question, we might reach a different conclusion.

Actually, neither provision governs the instant case. A striker continues as an employee during the strike and only removes himself from actual labor. He retains his status at all times and again becomes a working employee when the strike is terminated. *Burger Unemployment Compensation Case,* 168 Pa. Superior Ct. 89, 77 A. 2d 737 (1951). The Superior Court, in this case, said that since the strike caused the Company to lose some orders which resulted in a loss of production thereby creating a lack of work, the inability of Company to rehire strikers was the claimants' fault; and, therefore, there was a voluntary leaving of work. This is incorrect since the workers *never* actually left their employment. Since both 402(b) and (d) apply to work stoppage *during* a labor dispute, neither subsection applies here; the strike was settled and the dispute ended before any application for benefits was made. The slack in the production and the decrease in jobs, which makes it impossible for Company to rehire or reinstate the employees, thereby created an involuntary quit and entitled the workers to unemployment compensation.

Judgments reversed.

Mr. Justice BELL dissents.

Mr. Justice MCBRIDE took no part in the consideration or decision of this case.