## Commonwealth ex rel. Williams v. Wright

*Richard J. Aherne, Assistant District Attorney,* for petitioner.

*Herbert Karasin,* for defendant.

SCHAEFFER, *J.*, April 29, 1980—This is a support proceeding which was instituted by Joyce Williams. She filed her petition under The Pennsylvania Civil Procedural Support Law[1] alleging that she and Arthur Lee Wright are the parents of two children, Edwarria Williams, born March 13, 1976, and Kendra Wright, born May 30, 1978, that defendant is a friend of petitioner, and that defendant neglects to maintain his children.

This petition was filed on July 26, 1979.

On December 31, 1979, defendant, Arthur Lee Wright, filed preliminary objections in which he alleged that he had denied paternity of said children in proceedings before the Domestic Relations Section of this court, that he continues to deny paternity, that he never supported said minor children, that the statute of limitations applicable to support proceedings for Edwarria Williams is two years, that the cause of action involving the claim for the support of Edwarria Williams arose at her birth, that is, on March 13, 1976, and that the applicable statute of limitations destroys petitioner's right of action.

Before we reach the statute of limitations issue presented, an initial procedural problem is presented.

The Judicial Code specifically provides that an action commenced under the support provisions shall be a civil action "in accordance with the Rules of Civil Procedure."[2] However, neither the Judicial Code, any other act of assembly, nor any rule of court, states what kind of civil action it is.

---

1. Act of July 13, 1953, P.L. 431, as amended, 62 P.S. §2043.31 [see now, Judicial Code, 42 Pa.C.S.A. §6701 et seq.].

2. The Judicial Code, Act of July 9, 1976, P.L. 586, as amended, 42 Pa.C.S.A. §6704(f).

In the present case, the action was instituted by a petition for support to which the alleged father filed preliminary objections. Preliminary objections are authorized by the rules relating to assumpsit, but no rule provides that support actions shall conform to the rules relating to assumpsit, or for that matter, to any rules relating to any particular kind of civil action. Unless we insert an additional provision into the Judicial Code, an action which we decline to do, only those rules relating to civil actions generally are applicable to this proceeding.[3] Therefore, it would appear that the alleged father properly should have filed an answer to the petition under Pa.R.C.P. 206 in which he could have denied paternity and raised the statute of limitations.

Fortunately, we do not have to decide this issue, as the parties have stipulated that the facts presented in the so-called preliminary objections shall be accepted as true for the resolution of the statute of limitations issue here presented and the matter considered as if on a motion to dismiss.

The basic duty requiring a parent to support a child born out of wedlock rests upon The Support Law of June 24, 1937, P.L. 2045, as amended, 62 P.S. §1973. The Civil Procedural Support Law of 1953 as amended by the Act of August 14, 1963,[4] created procedures on the civil side of the court for the enforcement of this right which the Supreme Court reviewed in the case of Com. v. Dillworth, 431 Pa. 479, 246 A. 2d 859 (1968). The court in that case held that the act, as amended, failed to provide a procedure for a civil determination of paternity when paternity was disputed and a jury trial demanded. The court stated that the only way dis-

3. Particularly: Pa.R.C.P. 201 to 250, inclusive.

4. Act of August 14, 1963, P.L. 872.

puted paternity could be established in such a situation under the law as it was at that time was by a criminal action for wilful neglect to support a child born out of wedlock, or for fornication and bastardy.

The Superior Court subsequently held that if the alleged father waived his right to a jury trial and agreed to a civil determination of paternity, the court had jurisdiction to determine paternity in a civil proceeding, even if paternity were denied: Com. v. Jacobs, 220 Pa. Superior Ct. 31, 279 A. 2d 251 (1971).

Thus, the law at that time and as it continued to be until June 27, 1978, was that a proper person could institute a civil support proceeding against the person alleged to be the father of a child born out of wedlock. If the alleged father did not dispute paternity, or requested a civil non-jury determination of paternity, the court in a civil proceeding could enter an order determining paternity and/or requiring him to support the child. However, if the alleged father denied paternity and demanded a jury trial, a criminal action had to be instituted in order to establish paternity and provide the basis for a support order.

The Civil Procedural Support Law was further amended by the Act of April 28, 1978, No. 46, by adding two new subsections, designated subsections (e) and (f). These subsections read as follows:

"(e) All actions commenced under this section shall be brought within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be brought at any time within two years of any such contribution or acknowledgement by the reputed father.

"(f) An action commenced under this act shall be a civil action in accordance with the Rules of Civil Procedure. Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be by the court without a jury unless either party demands trial by jury. The trial, whether or not a trial by jury is demanded, shall be a civil action and there shall be no right to a criminal trial on the issue of paternity. The burden of proof shall be by a preponderance of the evidence."

The Judicial Code[5] incorporated within its provisions the Civil Procedural Support Law, including the new subsections (e) and (f).[6] These additional subsections in the Judicial Code went into effect on June 27, 1978, the date when the code as a whole became effective.[7]

The Act of April 28, 1978[8] also repealed that section of the Crimes Code which made it a crime to wilfully neglect to support a child born out of wedlock.

From the above history of the law in this area, we determine that the obligation to support a child born out of wedlock existed at the time Edwarria was born on March 13, 1976, and as of that time could be enforced by either of two alternate procedures: (1) a civil procedure under the Civil Procedural Support Law, or (2) a criminal action

5. Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. §6701 et seq.

6. Subsections (e) and (f) were added to the Judicial Code by the Act of April 28, 1978, P.L. 202, No. 53.

7. Act of April 28, 1978, P.L. 202, No. 53.

8. Act of April 28, 1978, P.L. 106, No. 46.

charging wilful neglect to support a child born out of wedlock.[9]

However, the civil procedure was defective in that it failed to provide for a jury trial. Therefore, if paternity were denied and a jury trial demanded, the right to support could only be established by a criminal proceeding which was subject to a two year statute of limitation: Com. v. Dillworth, supra. Subsection (f) added to section 6704 of the Judicial Code cured this deficiency by providing a procedure on the civil side of the court for a jury trial on the issue of paternity. Thus, since June 27, 1978, a civil proceeding to establish paternity has existed giving protection to the alleged fathers' rights subject only to the six year statute of limitations provided by subsection (e).

The alleged father argues that the statute of limitations which barred the institution of a criminal action charging wilful neglect to support a child born out of wedlock more than two years after the birth of the child, bars the present proceeding. We disagree.

As Com. v. Dillworth, supra, shows, the criminal action was never a part of the civil proceeding. The two year statute of limitations was a part of the Criminal Law, imposed by the Crimes Code,[10] and applied only to criminal actions. We hold that this two year statute of limitations has no application to the civil proceeding before us.

At the time Edwarria was born there was no stat-

9. Under section 4323 of the Crimes Code of December 6, 1972, P.L. 1432, No. 334, 18 Pa.C.S.A. §4323, repealed April 28, 1978, P.L. 106.

10. Act of December 6, 1972, P.L. 1432, sec. 1, 18 Pa.C.S.A. §108(b)(2).

ute of limitations applicable to a civil support proceeding. See Com. v. Jacobs, 220 Pa. Superior Ct. 31, 38, 279 A. 2d 251, 254 (1971), and the applicable statute is now six years as provided in subsection (e) of section 6704 of the Judicial Code.

Since the present civil section was instituted well within the six year statute of limitations, it is properly and timely filed.

For these reasons, the defense of statute of limitations raised by the alleged father in these proceedings is without merit and his motion to dismiss must be denied.[11]

Accordingly, we enter the following

## ORDER

And now, April 29, 1980, it is ordered and decreed that defendant's motion to dismiss these proceedings as barred by the statute of limitations is denied.

---

11. Even if the obligation to support a child born out of wedlock were a new obligation created on June 27, 1978, a proceeding for support under the facts of this case would be proper. A statute is not "retroactive" in its effect merely because it creates a new cause of action based on antecedent events, here the pre-existing parent-child relationship: Burger Unemployment Compensation Case, 168 Pa. Superior Ct. 89, 77 A. 2d 737 (1951); Timms v. Potts, 127 Pitts. L.J. 145 (1978). Thus, even if there had been no duty to support Edwarria when she was born, the legislature could validly have created such a duty thereafter, and had it done so, the failure to support Edwarria after the effective date of the act, would have created a liability as of that time. By the same reasoning, if there was a duty to support Edwarria existing when she was born but no civil procedure to enforce it in certain situations, the legislature could thereafter authorize the civil procedures required.